UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Jason A. Ritchie,

Plaintiff,

v.

Commissioner of Social Security,

Defendant.

No. 1:26-cv-1903-GSA

**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

(ECF Nos. 11, 12)

## I. Introduction

Plaintiff Jason A. Ritchie seeks judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (SSDI) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act.

## II. Procedural Background

On January 13, 2023, Plaintiff filed an application for SSDI and SSI alleging disability as of November 23, 2022.

The Commissioner denied Plaintiff's claim initially on June 28, 2023, and on reconsideration on March 27, 2024. The ALJ held a hearing on January 28, 2025. AR 25–54. On March 25, 2025 the ALJ issued an unfavorable decision. AR. 17–36. The Appeals Council denied Plaintiff's request for review on January 13, 2026 and this appeal followed. AR. 1–6.

## III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but it is less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation and quotations omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the Agency's decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his/her physical or mental impairment or impairments are of such severity that s/he is not only unable to do his/her previous work, but cannot, considering his/her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which s/he lives, or whether a specific job vacancy exists for him/her, or whether s/he would be hired if s/he applied

for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for an ALJ to employ when evaluating the alleged disability of a claimant. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether the claimant has engaged in substantial gainful activity during the period for which Plaintiff is alleging he or she experiences a disability; 2- whether the claimant has a medically determinable "severe impairments" affecting the claimants ability to perform basic work activities; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in the agency's regulations (20 C.F.R. § 404, Subpart P, Appendix 1); 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant has the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV. <u>**The ALJ's Decision**</u>

At step one, the ALJ found that Plaintiff engaged in substantial gainful activity during the period from August 2024 to March 2025. AR 22. The ALJ also found that there was a 12-month period during which Plaintiff did not engage in substantial gainful activity, namely November 2022 through July 2024. Thus, the analysis proceeded to step two.

At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus type I and vertigo. AR 23.

At step three, the ALJ found that Plaintiff did not have an impairment, or combination thereof, that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 26.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and

concluded that Plaintiff had the following RFC:

> the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant is never able to climb ladders, ropes, and scaffolds, and should not work in environments exposing him to unprotected heights or machinery with dangerous, moving mechanical parts. The claimant should not work in occupations that require the operation of a motor vehicle.

AR 27.

At step four, the ALJ found Plaintiff could not perform past relevant work as a License Clerk. AR 30.

At step five, in reliance on the testimony of a vocational expert (the VE), the ALJ found that Plaintiff could perform the following jobs existing in significant numbers in the national economy: Industrial Cleaner, Kitchen Helper and Hospital Cleaner. AR 31. Accordingly, the ALJ found that Plaintiff was not disabled at any time since the alleged disability onset date of November 23, 2022. Id.

## V. Issues Presented

Plaintiff asserts two claims of error: 1- "where the ALJ fails to state clear and convincing reasons for rejecting Ritchie's symptoms and limitations, the court should reverse." MSJ at 5, ECF no. 11; and 2- "where the ALJ does not consider work activity permitted and encouraged by the statute and regulations, the court should reverse." MSJ at 12.

### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); see Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.; accord Kitchen v. Kijakazi, 82 F.4th 732, 738 (9th Cir. 2023). To determine whether substantial evidence supports the Agency's findings, the court must review "all the pages of the ALJ's decision," Kaufmann v. Kijakazi, 32

F.4th 843, 851 (9th Cir. 2022), "weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion," Aukland, 257 F.3d at 1035 (citation omitted). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**B. RFC Generally**

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which comprises the most that a claimant is still capable of doing despite the claimant's particular limitations. This RFC represents an assessment "based on all the relevant evidence" contained within the Certified Administrative Record. 20 C.F.R. § 416.945(a)(1). The residual functional capacity must consider all of the claimant's impairments, whether those impairments are severe or non-severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ "is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). The Ninth Circuit has stated that it is "not our prerogative" on federal review "to assume the ALJ's role and reweigh the evidence" regarding the establishment of the RFC. Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021).

**C. Subjective Symptoms Generally (Issue 1)**

The Ninth Circuit has established a two-part test for evaluating a claimant's allegations regarding subjective symptoms. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017); see also Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ [*16] determines whether there is "objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged." Trevizo, 871 F.3d at 678 (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). Second, if a claimant presented such evidence, and there is no evidence of malingering, the ALJ may reject the claimant's statements about the severity of the claimant's symptoms "only by offering specific, clear and

convincing reasons for doing so." Id.

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting **the medical** evidence in support of his or her residual functional capacity determination." Id. at 489. Instead, the ALJ must identify the testimony regarding the claimant's symptoms that the ALJ finds not credible, and explain what evidence undermines the claimant's testimony. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); see also Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony, and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony about the intensity" of her symptoms); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (providing that the ALJ's reasons [*17] for discounting a claimant's testimony must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony").

"Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about symptoms, evidence from medical sources, and observations by the Agency's employees and other individuals. See 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029. In addition, the ALJ may consider other factors, such as the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain. See 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029.

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional

limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**D. Discussion (issue 1)**

While the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. AR 27. In addition, because the ALJ found no malingering the ALJ was required to identify clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptomology.

The ALJ began with a summary of the medical evidence, broken down here into subparts:

- The claimant received treatment since November of 2022 for diabetes mellitus type I (Exhibits 1F, p. 12, 20; 2F, p. 35) and vertigo (Exhibits 1F, p. 14; 2F, p. 37). On December 2, 2021, it was noted that the claimant was followed by an endocrinologist for his diabetes mellitus (Exhibit 2F, pp. 37, 39). The claimant denied dizziness or headaches. A physical examination was normal (Exhibit 2F, pp. 37-38).
- On December 14, 2021, the claimant was seen in endocrinology, and he had last been seen in endocrinology in June of 2021. Although the claimant had been treated for type I diabetes mellitus since age 15, when he was diagnosed with diabetic ketoacidosis, his other hospitalizations were due to hypoglycemia, but his condition had improved significantly after insulin pump therapy was initiated in 2005 (Exhibit 2F, p. 32).
- It was noted that on October 13, 2021, the claimant had been hospitalized for a near syncopal episode, and etiology was unknown (Exhibit 1F, p. 14). His blood sugar before the incident was normal and his blood sugar at the emergency room were normal. His blood sugar was not taken at the exact time of the incident. There was no etiology and no finding on exam or with labs (Exhibit 2F, p. 32).
- There was an emergency room visit in 2016, and a motor vehicle accident in November of 2017 (there were no injuries and emergency medical services (EMS) was not called). The claimant reported that his blood sugar was 71 mg/dL at that time (Exhibit 2F, p. 32).
- On December 14, 2021, a physical examination was normal (Exhibits 2F, p. 35; 6F, p. 35). The claimant was, "still not using his continuous glucose monitor again for unclear reasons" (Exhibit 2F, p. 32). The claimant had a Dexcom continuous glucose monitor, and he had not been motivated to initiate despite having the equipment at home. PA April Herd would not complete DMV paperwork unless the claimant scheduled an eye exam, did his labs, and did his part in starting continuous glucose monitoring (Exhibit 2F, p. 36). The claimant's A1c was at goal at 7.0% (Exhibit 6F, p. 36).
- On January 17, 2022, there were no reported episodes of hypoglycemia

(Exhibit 2F, p. 31).

- Endocrinology checks in June of 2022, November of 2022, July of 2023 and October of 2023 were unremarkable (Exhibit 6F, pp. 30, 24, 16, 10).
- An eye examination in May of 2023 showed no diabetic retinopathy (Exhibit 7F, p. 1).
- An examination in March of 2024 was generally normal and findings were unremarkable. An A1c was 7.2% (Exhibit 7F, p. 6).

AR 28–29.

As stated above, the ALJ found Plaintiff's symptom allegations not entirely consistent with the evidence because, "There were few changes in the treatment plan, and the claimant's impairments remained stable with medication treatment. Additionally, the claimant was not fully compliant with treatment. Other than an episode of syncope on October 13, 2021, with unknown etiology, the claimant has remained stable." AR 29.

Plaintiff contends: "Because of his insulin dependent diabetes, Ritchie has very low and very high blood sugar episodes. When those episodes occur, Ritchie can call in to work or risk ending up in the hospital." MSJ at 5, ECF No. 11.

But as set forth above, Plaintiff's condition was stable except for 1 near syncopal episode (fainting or passing out) which occurred in October 2021. In addition: 1- his A1c was at goal of 7.0% in December 2021 (AR 28, 378-79, 510); 2- on January 17, 2022, there were no reported episodes of hypoglycemia (AR 372); 3- in 2022 and 2023 his endocrinology visits were reported as unremarkable (AR 484, 490. 498, 504); and 4- in March 2024 Plaintiff's A1c was 7.2% (AR 517).

Plaintiff does not contest these factual findings, nor does he contest the ALJ's overall characterization of a stable condition. Plaintiff also neglects to cite any examples to the contrary occurring during the relevant period or otherwise.

Further, hyperglycemia and hypoglycemia are arguably not "symptoms" subject to the clear and convincing reasoning analysis but are objectively verifiable readings which Plaintiff does not

substantiate other than by reference to his testimony. Further, Plaintiff neither cites objective examples of blood sugar swings in the record, nor identifies examples of his reporting these swings to his providers. Rather, it appears that he reported these swings only to the ALJ at the hearing. Thus, other than possibly one syncopal episode, there appears to be no objective support for these blood sugar swings.

As for Plaintiff's alleged risk of hospitalization, as noted above, he was hospitalized on only one occasion on October 13, 2021 for a near syncopal episode of unknown etiology.

Despite evidence that his blood sugar was well controlled, Plaintiff quotes the following testimony as an example illustrating why he would call into work:

> I was calling in throughout the course of my employment, you know, and they knew. And after, I forget what date it was, but after about five or so years after I've been working there, an incident happened at the DMV where it made me terrified to have a low blood sugar at work. I was working one day and my blood sugar just dropped quickly to a point where -- I do not fall unconscious with a low blood sugar. I can still interact with people, I can do things and a lot of times I'll, I'll be sitting there just in a daze, not looking at -- my eyes will be open, but I won't respond to things. And this happened. My, one of my coworkers went and got management and said hey something's wrong with Jason we need to do something. And they went and checked on me. They moved me into a small room. It was our first aid room and they left me there for five and half hours. When I found that out the next day or something, that freaked me out and I was terrified that anytime I had a low blood sugar I'd call in.
>
> I have bits and pieces of memories of it. I remember when I sat down for lunch, my coworkers tried to give me a mint to eat 'cause she knew I was having some issues and I was playing with it. I remember that.

MSJ at 5 (citing AR 52–54)

Plaintiff further testified that he was ultimately fired for calling in too much. Id.

However, Plaintiff's argument regarding his need to call in sick "or risk ending up in the hospital," does not align with his testimony where he describes only a single incident that occurred after working at the DMV for approximately 5 years, and importantly does not adequately explain his pattern of absenteeism that ultimately resulted in his termination.

Plaintiff also describes the following symptoms and limitations reported in his function report:

> Low blood sugar causes Ritchie to sweat and interferes with waking up. AR 271. Ritchie can engage in activities of daily living including laundry, cleaning, caring or a small patio about once a week for a couple of hours, and grocery shopping weekly. AR 272, 273. Ritchie does not drive. AR 273. Ritchie lost his driving license because of his diabetes. Id. Ritchie has difficulty standing, walking, talking, seeing, remembering, completing tasks, concentrating, understanding, following instructions, and using his hands. AR 275. These difficulties arise with low blood sugar, causing dizziness and loss of mental abilities. He can walk up to two miles and pay attention for several hours. Id. He handles stress poorly. AR 276. Ritchie has used an insulin pump for 10 years. Id. (emphasis added).

Although these symptoms and limitations may well be a <u>manifestation</u> of low blood sugar, it is again worth noting that he identifies no objective findings of severe low blood sugar other than the one hospitalization described above, nor subjective reports he made to clinicians of extreme low blood sugar. He also cites no instances when he described these symptoms to his clinician explaining that they were the result of his blood sugar readings.

Finally, Plaintiff provides the following:

> Getting to work, persisting through the workday, and avoiding extra breaks while maintaining productivity are not only reasonable expectations and demands of an employer, the failure to meet that standard caused Ritchie to get fired twice. AR 52–54. Ritchie stated that he rode the blood sugar roller coaster having struggled with diabetes since age 15. The law of this circuit obligates the ALJ to address Ritchie's testimony with particularity. Brown-Hunter, 806 F.3d at 494; Holohan, 246 F.3d at 1202. The ALJ found that in general when Ritchie was not hypoglycemic or hyperglycemic that Ritchie would perform very heavy work. To account for infrequent dizziness, the ALJ found that Ritchie could not climb or work in dangerous work environments, including driving a vehicle. Those limitations do not address absenteeism or loss of productivity while hypoglycemic or just feeling ill when the blood sugar ran too high or too low.
>
> Ritchie is not reliable enough to meet the common sense understanding of sustained work activity framed in 20 C.F.R. §§ 404.1545(a), 416.945(a) and explained in Social Security Ruling 96-8p. The record demands that conclusion because Ritchie lost his job at the DMV and his attempt to work later in private industry. The ALJ did not address the core issue in Ritchie's testimony nor did the ALJ give the Court any basis for discerning why the agency did not accept that testimony.

MSJ at 10 (emphasis added).

As stated by Plaintiff, he lost his job at the DMV for calling out too many times, but notably he did not state that his job loss was for a failure to meet productivity or performance standards,

nor for taking excessive breaks. Plaintiff further testified that at his current job with the Department of Social Services he was facing impending termination also due to calling out too many times.

As for his reason for calling out, Plaintiff testified that he would call out when his blood sugar was too low upon waking, which can happen despite his insulin pump if, for example, he engages in extra activity but doesn't compensate with additional food intake. See AR 57. He states that if his blood sugar is below 50, he doesn't go anywhere, and if it is below 20 he calls 911. AR 58. He described an incident where an EMT responded to a 911 call and his blood sugar was found to be 17. AR 56. He described another incident where he called 911 when his blood sugar was over 500. AR 57. But Plaintiff fails to cite any medical records documenting these emergency encounters.

The ALJ also discounted Plaintiff's symptom testimony in part because he "was not fully compliant with treatment." The ALJ cited examples:

> On December 14, 2021, a physical examination was normal (Exhibits 2F, p. 35; 6F, p. 35). The claimant was, "still not using his continuous glucose monitor again for unclear reasons" (Exhibit 2F, p. 32). The claimant had a Dexcom continuous glucose monitor, and he had not been motivated to initiate despite having the equipment at home. PA April Herd would not complete DMV paperwork unless the claimant scheduled an eye exam, did his labs, and did his part in starting continuous glucose monitoring (Exhibit 2F, p. 36). The claimant's A1c was at goal at 7.0% (Exhibit 6F, p. 36). AR 29.

The failure to follow a prescribed course of treatment can undermine claims of disabling symptoms. SSR 18-3p; see also Fair v. Bowen, 885 F.2d 597, 603–04 (9th Cir. 1989) (explaining that A claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can undermine her allegations about the severity of an impairment).

Finally, the ALJ's RFC is supported by the following opinions: 1- that of Dr. Wagner, the consultative examiner who opined Plaintiff had no limitations other than the need to avoid unprotected heights due to vertigo; 2- that of non-examining consultant Dr. Bitonte, who opined Plaintiff's physical impairments were non-severe; and 3- that of non-examining consultant Dr.

Malabed whose opinion mirrored that of the RFC. AR 29.

In sum, the ALJ identified clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony by finding that Plaintiff's conditions were treated effectively, that there were instances of treatment non-compliance, that he was stable but for one syncopal episode in October 2021, and finally the three medical opinions which support the ALJ's conclusion.

Plaintiff's contentions that he had extreme blood sugar swings, risked hospitalization by going to work, had multiple 911 calls and EMT visits with blood sugar readings as low as 17 and as high as 500, are all unsubstantiated in the record.

**E. <u>Trial Work Period (Issue 2)</u>**

Plaintiff argues as follows:

> <u>The ALJ did not consider the period August 2024 to March 2025 because Ritchie engaged in substantial gainful activity during those eight months.</u> AR 22, ¶ 2. An impairment and the lack of substantial gainful activity must last for at least 12 months or be expected to result in death. Barnhart v. Walton, 535 U.S. 212, 218–19 (2002). The work attempt starting in August 2024 and ending in March 2025 does not undermine Ritchie's claim nor permit the ALJ to ignore that evidence.
>
> Once outside of the waiting period and after the filing of an application, the Social Security Act permits the testing of work capacity with a trial work period. 20 C.F.R. §§ 404.1592. Ritchie can work and still be considered disabled. Id. at (a). Work that does not constitute substantial gainful activity does not preclude a disability finding. 20 C.F.R. § 404.1520(a)(4)(i). Work attempts that stop or fall below substantial gainful activity thresholds get classified as an unsuccessful work attempt. 20 C.F.R. § 404.1574(a)(1). Looking for work to take advantage of the regulatory exceptions to working in the context of a disability claim does not constitute a valid reason. The ALJ cannot discourage that which the regulations encourage.
>
> Ritchie clearly exceeded the period for an unsuccessful work attempt. 20 C.F.R. § 404.1520(a)(4)(i). But Ritchie was well within the boundaries of a trial work period of nine non-consecutive months. 20 C.F.R. §§ 404.1592. This is not a case where the claimant manipulated the level of work activity and continued in that vein. <u>Nadon v. Bisignano</u>, 145 F.4th 1133, 1138 (9th Cir. 2025). Ritchie tried in good faith to work, and his work attempt began more than 12 months after the cessation of work (the alleged onset date) and after the date of application for benefits. Because Ritchie did not exceed the trial work period and because that work attempt ended for reasons related to Ritchie's disability, that work activity does not impact the relief sought in Issue A, supra. On that issue, the Court may exercise its

discretion to award benefits or remand on the entire period, not just the period through July 2024. MSJ at 12 (emphasis added).

Defendant responds in relevant part:

And Plaintiff's arguments have no basis. See ECF No. 11 at 12. He asserts the ALJ did not consider the eight-month period beginning in August 2024, but the ALJ obviously did—he found Plaintiff went back to work and engaged in SGA, which Plaintiff does not deny. AR. 22. Plaintiff also asserts that the ALJ ignored evidence except he cannot identify any evidence the ALJ supposedly ignored because there is none. As pointed out above, there is no evidence ofany treatment after March 2024. See supra p. 6.

Plaintiff then asserts his work activity was part of a trial work period (TWP), but he misunderstands this concept. A TWP applies only after a claimant is found disabled. 20 C.F.R. §§ 404.1592(a) ("The trial work period is a period during which you may test your ability to work and still be considered disabled) (emphasis added); 404.1592(d)(2)(iii) (noting that work activity cannot be a "trial work period" if it occurred "before the date of any notice of determination or decision finding that you are disabled . . . ."), 404.1592(e) ("The trial work period begins with the month in which you become entitled to. . . benefits based on disability.").

In other words, the TWP allows a disabled beneficiary to test his ability to work for up to nine months without compromising his benefits. In this case, Plaintiff was not disabled. Therefore, he was not entitled to a TWP, and the ALJ properly found that Plaintiff engaged in SGA beginning August 2024. AR. 22; 20 C.F.R. § 404.1520(b).

Plaintiff finally asserts that his work ended for reasons related to his disability (ECF No. 11 at 13), but he again cites no evidence because there is none

### 1. <u>The relevant law</u>

A trial work period is a scheme allows for recipients of SSDI to "test [their] ability to work," 20 C.F.R. § 404.1592(a), and still receive benefits for a specific period, see 42 U.S.C. § 422(c). This period of time is called a "trial work period," 20 C.F.R. § 404.1592(a), or a "period of trial work," and "[w]ork done during a trial work period . . . may not be considered in determining whether a claimant's disability has ceased during that period," Newton v. Chater, 92 F.3d 688, 692 (8th Cir. 1996). See Walker v. Sec'y of Health & Hum. Servs., 943 F.2d 1257, 1259 (10th Cir. 1991)("A trial work period is designed to enable an individual to test his or her ability to return to work without losing disability insurance benefits."). During a trial work period, an individual will continue to receive the full amount of her or her SSDI benefits. See Red Book at 20; 42 U.S.C. § 422(c)(2) ("For purposes of sections 416(i) and 423 of this title, any services rendered by an individual during a period of trial work shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period.").

("[T]o be entitled to a trial work period, a claimant must be entitled to disability insurance benefits."); Mullis v. Bowen, 861 F.2d 991, 993 (6th Cir. 1988) ("[A] trial

work period only applies after a person has been adjudged disabled."); Cieutat v. Bowen, 824 F.2d 348, 358 (5th Cir. 1987) (noting that 42 U.S.C. § 422(c), which defines [*15] trial work, provides that "a period of trial work . . . shall begin with the month in which he becomes entitled to disability insurance benefits").

**2. Discussion**

First, there is no need to discuss the above regulations because a discussion of a trial work period here is irrelevant. Specifically, 1- a trial period only applies after a person has been adjudged disabled, which Plaintiff had not (See 20 C.F.R. § 404.1592(a)) (". . .we will consider the work you did during the trial work period in determining whether your disability ended at any time after the trial work period.") (emphasis added). and 2- the ALJ did not consider the period of August 2024 to March 2025 in the disability determination as evidenced by the latest dated record in the administrative record, which is March 20, 2024 (found in Exhibit 7F, which are Office Treatment Records dated 12/14/2021 to 03/20/2024 from University Diabetes and Endocrine Specialists). AR 512-550.

Second, to the extent that Plaintiff encourages the Court to consider Plaintiff's return to work, or to consider any time period outside the specific closed period of alleged disability, the Court declines Plaintiff's request. Here, the Court finds that substantial evidence in the record supported the ALJ's determination that during the relevant period, Plaintiff was not disabled and capable of engaging in SGA, and therefore remand is unwarranted. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision).

**VI. Conclusion and Order**

Substantial evidence and applicable law support the ALJ's non-disability determination. Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 11) is **DENIED**.
2. Defendant's cross motion (Doc. 12) is **GRANTED.**
3. This decision of the Commissioner of Social Security is **AFFIRMED.**
4. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **August 12, 2026**

**/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE